IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| MARIJOHN LaNETTE ROBINSON | ) Case No. 05-71899 |
| | ) |
| Debtor. | ) |

ORDER OVERRULING OBJECTIONS TO CONFIRMATION BY
FIRESIDE BANK AND MIDWEST UNITED CREDIT UNION

Debtor Marijohn LaNette Robinson filed her voluntary Chapter 13 bankruptcy petition on October 27, 2005. In her Schedules, the Debtor lists two vehicles, a 2003 Mitsubishi Galant which is subject to a secured claim held by Midwest United Credit Union,[1] and a 1999 Buick Regal, which is subject to a secured claim held by Fireside Bank d/b/a Fireside Thrift Co. Both of these vehicles were purchased within 910 days prior to the Debtor's bankruptcy filing. The Galant has a market value of approximately $14,000 and Midwest United's claim is in the amount of $13,540. The Regal has a market value of $8,218, and Fireside Bank's claim is $10,256.52. Midwest United is, therefore, oversecured; Fireside Bank is undersecured.

The Amended Plan, filed December 21, 2005, treated Midwest United as a creditor whose claim would be paid in full. Fireside's secured claim, however, was to be reduced to the value of its collateral. Midwest United and Fireside Bank each filed objections to the Debtor's Chapter 13 Plan valuation as applicable to their respective vehicles. Fireside objected to the Plan's proposed bifurcation of its claim into secured and unsecured portions

---

[1] Referred to in the Plan as "Centrix."

under § 506.[2] Both creditors objected to the Plan's proposal to pay them interest at the rate provided under the Local Rules.[3]

The Debtor conceded that the categorization of Fireside's claim, as being subject to § 506 valuation, was incorrect – both of these creditors fall within the category of creditors to which § 506 valuation is not applicable, because the claims involve motor vehicles acquired for the Debtor's personal use within 910 days prior to her bankruptcy filing. Debtor states she will file an amended plan placing both claims in the category to which § 506 does not apply. However, the parties still dispute the interest rate to which these creditors are entitled. Debtor proposes to pay these claims at the rate provided under the Local Rules; the creditors assert they are entitled to their respective contract rates of interest.

As amended by the Bankruptcy Abuse Prevention Consumer Protection Act of 2005,[4] the Bankruptcy Code now provides that a bankruptcy court shall confirm a plan if –

> (5) with respect to each allowed secured claim provided for by the plan –
>    (A) the holder of such claim has accepted the plan;
>    (B)(i) the plan provides that –
>       (I) the holder of such claim retain the lien securing such claim until the earlier of –
>          (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>          (bb) discharge under section 1328; and

---

[2] 11 U.S.C. § 506(a).

[3] Local Rule of Practice, U.S. Bankruptcy Court, Western District of Missouri 3084-1.E. Such rate is adjusted twice each year for new filings, based on the 5-year treasury note rate, plus 3%. The rate remains constant throughout the case.

[4] Pub. L. No. 109-8, 199 Stat. 23 § 418 (Apr. 20, 2005). Because this case was filed after October 17, 2005, the BAPCPA amendments apply here.

>   >   (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and
>   >   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>   >   (iii) if –
>   >   >   (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>   >   >   (II) the holder of the claim is secured by personal property, the amount of such payment shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>   >   (C) the debtor surrenders the property securing such claim to such holder.[5]

Thus, debtors have three options for proposed treatment of secured creditors in Chapter 13 cases: They can (1) obtain the secured creditor's approval of the plan; (2) surrender the collateral to the creditor; or (3) provide that the creditor retain its lien and a promise of future property distributions (such as deferred cash payments) whose total value, as of the effective date of the plan, is not less than the allowed amount of the creditor's claim. This third alternative is commonly known as the "cramdown option."[6] This third alternative is what the Debtor proposes to do with Midwest United and Fireside Bank in this case.

Appearing after subsection (a)(9), section 1325 now contains an unnumbered paragraph that provides:

---

[5] 11 U.S.C. § 1325(a)(5).

[6] *Till v. SCS Credit Corp.*, 541 U.S. 465, 468-69, 124 S.Ct. 1951, 1955, 158 L.Ed.2d 787 (2004).

3

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.[7]

Under this provision, if a Chapter 13 debtor purchased a motor vehicle within 910 days (which is approximately two and a half years) prior to filing for bankruptcy protection, § 506 does not apply to the claim held by the lender who has a purchase-money security interest in the vehicle.

> Section 506 provides, in relevant part:
>
> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
>
> (2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the

---

[7] 11 U.S.C. § 1325(a).

4

time value is determined.[8]

In other words, § 506(a)(1) permits debtors to bifurcate a secured creditor's claim into secured and unsecured portions, based on the value of the collateral, as they could prior to the BAPCPA amendments.

As mentioned above, the parties here agree that, because the creditors' claims are secured by motor vehicles acquired for the Debtor's personal use within 910 days prior to her bankruptcy filing, § 506 does not apply to their claims pursuant to § 1325(a). Thus, these creditors are entitled to secured claims for the total amount of their claims, regardless of the value of the respective vehicles, and the Debtor cannot bifurcate them. The creditors argue, however, that they are entitled to their respective contract rates of interest under these provisions of the amended Bankruptcy Code. The Debtor disagrees.

In 2004, the Supreme Court in *Till v. SCS Credit Corp.*[9] held that Debtors may modify the interest rates that secured creditors are to receive in a Chapter 13 case. According to the Supreme Court, § 1325(a)(5)(B) "does not mention the term 'discount rate' or the word 'interest.'"[10] Rather, it simply requires bankruptcy courts to ensure that the property to be distributed to a particular secured creditor over the life of a bankruptcy plan has a total 'value, as of the effective date of the plan,' that equals or exceeds the value of the creditor's

---

[8] 11 U.S.C. § 506(a).

[9] 541 U.S. 465, 475, 124 S.Ct. 1951, 1959, 158 L.Ed.2d 787 (2004).

[10] *Id*. 541 U.S. at 473-74, 124 S.Ct. at 1958.

allowed secured claim."[11] Further, "Chapter 13 expressly authorizes a bankruptcy court to modify the rights of a creditor whose claim is secured by an interest in anything other than 'real property that is the debtor's principal residence.'"[12] The bankruptcy court's authority to modify the number, timing, or amount of the installment payments from those set forth in the debtor's original contract is "perfectly clear."[13]

The creditors in this case assert that *Till* is no longer applicable after the BAPCPA amendments to § 1325(a) because they are entitled to receive, under § 1325(a)(5), the full "value" of their claim, and that this value must include interest at the contract rate. I disagree.

First, as the Supreme Court held, the language of § 1322(b)(2) permits debtors to modify the interest rate as to certain creditors. Section 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."[14] Just as Congress previously provided that the terms of home mortgages cannot be modified in a Chapter 13 plan, it could have in BAPCPA provided the same for car loans. But Congress did not modify § 1322(b)(2) at all, nor did it mention the terms "discount rate" or "interest"

---

[11] *Id*.

[12] *Id.* 541 U.S. at 475, 124 S.Ct. at 1959 (*citing* 11 U.S.C. § 1322(b)(2)).

[13] *Id.*

[14] 11 U.S.C. § 1322(b)(2).

in its amendments to § 1325 or § 506. If Congress intended to overturn *Till*, it could have made a specific amendment to one of those sections addressing the interest rate, particularly in view of the Supreme Court's comment in *Till* that:

> The fact that Congress considered but rejected legislation that would endorse the Seventh Circuit's presumptive contract rate approach [which is what Midwest United and Fireside Bank are asserting they are entitled to in this case], H.R. 1085, 98th Cong., 1st Sess., § 19(2)(A) (1983); H.R. 1169, 98th Cong., 1st Sess., § 19(2)(A) (1983); H.R. 4786, 97th Cong., 1st Sess., § 19(2)(A) (1981), lends some support to our conclusion. . . . If we have misinterpreted Congress' intended meaning of 'value, as of the date of the plan,' we are confident it will enact appropriate remedial legislation."[15]

Congress obviously had the opportunity to enact "appropriate remedial legislation" as to interest rates in BAPCPA, but it did not do so.

In addition, the legislative history of the amendments to § 1325, although relatively scant, supports the conclusion that Congress did not intend to overturn *Till* and mandate a contract rate of interest for secured creditors. According to one of the House Reports relating to the protections for secured creditors afforded in BAPCPA:

> [The new law]'s protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use. Where the collateral consists of any other type of property having value, [the new law] prohibits bifurcation of specified secured debts if incurred during the one-year period preceding the filing of the bankruptcy case. The bill clarifies current law to specify that the value of a claim secured by personal property is the replacement value of such property without deduction for the secured creditor's costs of sale or marketing. In addition, the bill terminates the automatic stay with respect to personal property if the debtor does not timely reaffirm the

---

[15] *Id*. 541 U.S. at 480, 1254 n. 19, S.Ct. at 1962 n. 19.

>underlying obligation or redeem the property. [The new law] also specifies that a secured claimant retains its lien in a chapter 13 case until the underlying debt is paid or the debtor receives a discharge.[16]

Nowhere does the Report mention an amendment relating to interest rates or *Till*.

Finally, the only court that has addressed this issue, thus far, held that the BAPCPA amendments do not change a debtor's ability to modify a secured creditor's rights. In *In re Johnson*, the bankruptcy court expressly held that the unnumbered paragraph in § 1325 "does not say that loans secured by 910 vehicles cannot be modified; it merely says that 'section 506 shall not apply.'"[17] Accordingly, while § 1325 prevents a debtor from paying less than the full contract amount if the debtor chooses to retain the vehicle, "a debtor may still modify the term and interest rate of the loan."[18]

In sum, I conclude that the BAPCPA amendments did not overrule *Till*. Such amendments do require this Debtor to pay the full amount of these creditors' claims over the course of the Chapter 13 Plan. However, debtors continue to be permitted under § 1322(b)(2) to modify the rights of secured creditors, other than those holding a lien against the debtor's residence. As the Supreme Court held in *Till*, such modification includes the interest rate to be paid. Under *Till*, the correct rate of interest on such claims is the "prime-plus" formula rate which, in this District, is established by Local Rule.

---

[16] H.R. Rep 109-31(I), pt. 1, at 17 (April 8, 2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 103 (footnote omitted).

[17] ____ B.R. ____, 2006 WL 270231 at *2 (Bankr. M.D. N.C. Feb. 2, 2006).

[18] *Id*. at *4.

Accordingly, the Objections to Confirmation filed by Midwest United Credit Union Fireside Bank d/b/a Fireside Thrift Co. are OVERRULED, provided that, within 10 days, the Debtor files a Second Amended Plan paying Midwest United and Fireside Bank the full amount of their claims, with interest at the Local Rule rate.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

#31 #43

Date: February 10, 2006.